### AUDENREID and others *v.* WOODWARD.

*(Circuit Court, D. Maine. September, 1880.)*

1. JUDGMENT—PARTIES CONCLUDED—NOTICE.—A judgment is conclusive upon all parties directly interested, both as to the validity and amount of a claim, where such parties have received notice of the pendency of the suit.

   *Robbins* v. *The City of Chicago,* 4 Wall. 657.

*Chas. P. Mattocks,* for plaintiffs.

*C. W. Larrabee,* for defendant.

Fox, D. J. This is an action for the recovery of the price of a cargo of coal, furnished by the plaintiffs to the defendant in March last, at the agreed rate of $2.95 per ton, amounting to $2,301, together with the further sum of $62.40, advanced by plaintiffs to the master on account of his freight money. The coal was loaded at Weehawken on board the bark Castalia, bound to Portland.

The defendant does not dispute either of the items claimed in the present suit, but the controversy between the parties is upon the defendant's right to a set-off of the sum of $317.22, paid by him to the master of the Castalia for demurrage at Weehawken, together with the expenses of counsel. On the arrival of the Castalia at this port a libel was filed by her master against her cargo of coal, claiming damages in the nature of demurrage. The cargo was seized by the marshal, and afterwards bonded by the defendant. Seasonable notice of the libel was given to the plaintiffs by the defendant, and they were requested by him to give instructions as to the matter, to which they replied, "they had no advice to give." The defendant notified them that he should hold them chargeable, and that they were bound to indemnify him from such suit, but they did not appear in defence of the cause, or in any way render any aid to the defendant. The case went to trial in the district court, and after a full hearing that court decreed to the libellant the sum of $250 as damages, on account of the improper detention of said vessel, together with the costs, which amount was subsequently paid by this defendant.

The judgment of the district court in that suit was not only conclusive upon the defendant, but also upon the plaintiffs in this suit, both as to the validity of the claim there presented and the amount of damages. This is fully settled by the supreme court of the United States in *Robbins* v. *The City of Chicago,* 4 Wall. 657.

The only remaining question is whether the plaintiffs are bound to indemnify the defendant against the claim of the ship, by reason of the cargo being subjected to this liability through their fault.

The bargain for the coal was made wholly by telegraph and letter. Quite a number of such communications passed between the parties on the sixteenth and seventeenth of February, and it is sufficient to say that the result was, that on the 17th a bargain was concluded between them, by which the plaintiffs sold and the defendant purchased the cargo, the same to be loaded before the 20th. The same day the defendant char-

tered the Castalia, then at New-York, to proceed to Weehawken for the cargo. Her master reported at the shipping office of the Pennsylvania Coal Company, who were to furnish the coal, on the plaintiffs' account, on the eighteenth of February about 5 o'clock in the afternoon. The next morning the vessel was in readiness for loading, and the master demanded his cargo. It was not furnished him until the fourth of March.

After the bargain was completed between these parties for the purchase of the coal, the plaintiffs telegraphed to the defendant, on the seventeenth of February, as follows: "Pittston Company cannot load before February 20th; therefore, offer off." As this was sent after the bargain was completed, it could have no effect, unless sanctioned by the defendant. Instead of consenting thereto, on receipt of the telegram he at once replied: "I have assumed obligation to furnish the coal, and have chartered vessel for the same, and expect you to comply with your proposition;" and this telegram he confirmed by letter the same day.

The plaintiffs replied "that they would go to New York and endeavor to have the company furnish the coal," and on the 18th they advised the defendant, by telegram, "that the company would load the Castalia." Upon this state of facts, the contract being that the Castalia should be loaded by the 20th, and she being in readiness prior to that date, but the cargo not having been furnished to her until some days after, it is clear that this delay was caused by the plaintiffs, or by the company from whom they were to procure the cargo. Neither the vessel, nor the defendant being in fault, the plaintiffs are primarily accountable for the damages which the defendant has thus sustained by the delay.

They, however, rely on two grounds why they should not thus be held responsible—*First,* they contend that the delay in loading was occasioned by the great draught of the Castalia; and, *second,* that as the tides were at Weehawken in the latter part of February the vessel would have grounded in the loading dock if fully loaded, and thereby would have interfered with other vessels; that, in fact, she was loaded as soon as

the water and state of the tides permitted. Two replies may be made to this suggestion—*First*, the fact is by no means established that the Castalia would have grounded if she had been fully loaded on the twentieth of February. The evidence is that her master sounded in the dock and reported there was sufficient water, and he repeatedly demanded his cargo. *Secondly*, the record in the district court in the suit for demurrage is conclusive that the ship was not in fault, but that she was entitled to, and did recover, damages for the delay occasioned by the neglect to furnish her with a cargo at the time stipulated in the contract. After the notice given to the plaintiffs, it was their duty to have appeared in that suit and then interposed this defence, if they would avail themselves of it. Not having done so they must abide the consequences of their neglect, and are not now at liberty in this suit to contest the matters involved in the claims made in that libel, one of which was whether the ship had a valid claim for demurrage. That point having been there adjudicated in her favor, the same is no longer open for controversy.

The remaining cause suggested by the plaintiffs, for which they should be exonerated from liability to indemnify the defendant, is that the Castalia had no legal claim for demurrage, as she was loaded in her turn, and by the rules of the coal company vessels were to be loaded as they reported at the office of the company; but this defence to the set-off, in the opinion of the court, is also closed to the plaintiffs, as the decree of the district court determined that there was a valid claim in the ship's behalf for the damages caused by the delay to provide her with a cargo. If the ship was bound to wait her turn, and was loaded in her turn, then, of course, there was no fault on the part of the plaintiffs, and no good ground for claiming demurrage; but this question is involved directly in the decree in the district court, and was there adjudicated, and such decree is binding on the parties to this cause. If this view of the effect of the decree of the district court is, however, erroneous, and the question is now open for consideration, the same result must follow, as by the contract between the parties to the present suit the cargo was to be loaded

before the 20th. The Castalia reported the 18th. If her cargo had been in readiness for her she could have been loaded in 24 hours. The bargain between these parties was fixed and definite as to the time the vessel was to be ready for her cargo, and the cargo provided for her. It was not, therefore, at all dependent upon any rules of the coal company as to loading vessels in turn.

These plaintiffs, by express agreement, stipulated that the ship should be loaded by a certain day, and they must abide by their contract; and the fact that the coal was to be procured by the plaintiffs from a third party, by whose rules vessels were to be loaded in turn as they reported, can have no effect upon the rights of the parties here in court. Such rules may, perhaps, exonerate the coal company from liability to the plaintiffs, if the plaintiffs were cognizant of them, and by their dealings with the company assented to and became bound by them. It is not shown that the defendant, at the time he purchased this coal of the plaintiffs, had any knowledge of the alleged custom of the coal company in this respect.

It cannot, therefore, be considered as in any way modifying the express contract between these parties, that the vessel should be loaded by the 20th, and the plaintiffs must be held accountable for the delay, and must make good to the defendant the damages he has thereby sustained.

The claim in set-off is therefore allowed.